UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAVE CCSF COALITION, et al.,

          Plaintiffs,

    v.

OLIVER LIM, et al.,

          Defendants.

Case No.  14-cv-05286-SI

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

Re: Dkt. No. 17, 20

      Currently before the Court is defendants' motion to dismiss.  Dkts. 17, 20.  Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing. For the reasons set forth below, the Court GRANTS in part and DENIES in part defendants' motion to dismiss.

## PROCEDURAL BACKGROUND

      This is a civil rights action arising from a student protest at City College of San Francisco ("CCSF") on March 13, 2014.   Dkt. 12, Pls.' First Amended Complaint ("FAC") ¶¶ 1, 2. Plaintiffs are Otto Pippenger, a CCSF student and participant in the protest, and Save CCSF Coalition ("Save CCSF"), the organizer and sponsor for the protest.  *Id*. ¶¶ 14, 15.  On December 2, 2014, plaintiffs filed this action for alleged violations of the First Amendment, Fourth Amendment, and Fourteenth Amendment under Section 1983 and for violations of state law.  Dkt. 1, Pls.' Complaint.[1]  In their FAC, plaintiffs named multiple defendants.  First, plaintiffs identified

---

[1] On February 6, 2015, plaintiffs filed their First Amended Complaint.  Dkt. 12, Pls.' First Amended Complaint ("FAC").

United States District Court
Northern District of California

defendants San Francisco Community College District[2] ("District"), Chancellor Arthur Tyler of CCSF, Chief Andre Barnes of San Francisco Community College District Police Department ("CCSF PD"), Lieutenant Jason Wendt of CCSF PD, Sergeant Don Quintana of CCSF PD, Sergeant Carlos Gaytan of CCSF PD, Officer Julie Torres of CCSF PD, Officer E. McGlaston of CCSF PD, and Officer Igor Boyko of CCSF PD (collectively "Community College defendants"). FAC ¶¶ 17, 19, 20, 22.  Second, plaintiffs identified defendants City and County of San Francisco ("City"), Chief Greg Suhr of San Francisco Police Department ("SFPD"), Sergeant Joshua Kumli of SFPD, and Officer Oliver Lim of SFPD (collectively "SF City defendants").  *Id.* ¶¶ 16, 18, 21.

On February 27, 2015, the Community College defendants filed a motion to dismiss all claims contained in plaintiffs' FAC.  Dkt. 17, Defs.' Mot. to Dismiss at 1.  On March 2, 2015, the SF City defendants filed a joinder in portions of the Community College defendants' motion to dismiss.  Dkt. 20, Defs.' Joinder at 1.  On April 13, 2015, plaintiffs filed an opposition to defendants' motion.  Dkt. 31, Pls.' Opp.  On April 20, 2015, the SF City defendants and the Community College defendants separately filed their replies.  Dkts. 32, 34, Defs.' Replies.

**FACTUAL BACKGROUND**

In their FAC, plaintiffs allege as follows.  In July of 2012, the Accrediting Commission for Community and Junior Colleges decided to terminate CCSF's accreditation.  FAC ¶ 14. Attempting to maintain its accreditation status, CCSF made changes to its governance and policies, which resulted in cuts to programs, tuition changes, layoffs, and pay cuts.  *Id.* ¶ 2, 14. Plaintiff Save CCSF formed as a coalition of students, staff, faculty, and community members in response to the changes and to preserve CCSF "as a college that offers affordable and quality education . . . and that addresses the needs of the diverse community in San Francisco."  *Id.* ¶ 14.

On March 13, 2014, plaintiff Save CCSF organized a rally on CCSF's campus to express concerns over the loss of accreditation and to call for the resignation of a trustee and for the

_____

[2] CCSF is part of the San Francisco Community College District.  Dkt. 12, FAC ¶ 15.

reversal of a new tuition policy.  *Id*. ¶¶ 2, 29.  Plaintiff Pippenger attended the rally, which began at Ram Plaza on CCSF's main campus.  *Id*. ¶ 29.  From Ram Plaza, the rally participants marched to Conlan Hall to demand a meeting with defendant Chancellor Tyler and in the alternative, to conduct a peaceful sit-in.  *Id*.  A year earlier, students had held a peaceful sit-in at Conlan Hall without any intervention by the police or administration.[3]  *Id*.  Although Conlan Hall was open to students and staff at the time of plaintiffs' rally, defendant Chancellor Tyler called for police enforcement from SFPD and CCSF PD, and ordered Conlan Hall to be closed to the protestors. *Id*. ¶ 30.   When protesters attempted to enter Conlan Hall, SFPD and CCSF PD officers "responded with unnecessary and excessive force, shoving and hitting numerous students."  *Id*. ¶ 31.

Plaintiff Pippenger suffered multiple injuries.  *Id*. ¶¶ 32-34.  Defendant Sergeant Gaytan of CCSF PD struck Pippenger's wrists at least seven times, fracturing both wrists.  *Id*. ¶ 32. Defendant Officer Lim of SFPD "body slammed" Pippenger to the ground, restrained him, punched him in the back of the head, and smashed his face into the ground, giving Pippenger a concussion.  *Id*. ¶ 33.   Then, defendant Sergeant Gaytan of CCSF PD and defendants Officers Torres, Boyko, and McGlaston of CCSF PD carried Pippenger by his fractured wrists up the stairs to an administrator's office.  *Id*. ¶¶ 34, 35.   While Pippenger was detained there, defendants failed to provide him with medical attention and repeatedly refused his requests to call his mother.  *Id*. ¶¶ 35, 36.   Then, defendants[4] booked Pippenger into the San Francisco Jail for resisting or interfering with an officer (Cal. Penal Code § 148) and battery on a peace officer (Cal. Penal Code § 243).  *Id*. ¶ 37.   Although Pippenger's parents posted bail, he remained in jail from mid-afternoon on March 13 until approximately 6 A.M. the following day.  *Id*.

Pippenger sustained a serious concussion and post-concussion syndrome, fractures to both

---

[3] It is unclear from the FAC whether the prior demonstration involved the same plaintiffs or was related to the same issues.

[4] Plaintiffs do not specify which defendants.

wrists, bruises, and post-traumatic stress disorder.  *Id*. ¶ 42.  Over the next several months, he suffered from "vomiting, severe headaches, visual disturbances, nightmares, sleep disturbances, flashbacks, fatigue, difficulty reading, difficulty concentrating, fear and anxiety, pain, and limited use of his wrists."  *Id*.  At the time the FAC was filed, he was still suffering from his injuries, which have interfered with his schoolwork, his internship, and his daily activities.  *Id*.

Plaintiffs Pippenger and Save CCSF wish to engage in, and associate with, "similar peaceable expressive activity" in the future, but are concerned that they may be subjected to unlawful violence and arrest or disciplinary action.  *Id*. ¶ 43.  On March 14, 2014, the day after the demonstration, defendant Chancellor Tyler issued a public statement, which he caused to be disseminated to at least 85,000 people, stating that the student protestors had engaged in "violent outbursts," that a student, impliedly Pippenger, "was witnessed striking an SFPD police officer."  *Id*. ¶ 38.  Plaintiffs allege that defendant Chancellor Tyler's statements are false.  *Id*.  In addition to potential criminal charges, the CCSF administration stated that Pippenger and members of Save CCSF would be subjected to disciplinary sanctions related to the demonstration.  *Id*.

Based on their factual allegations, plaintiffs bring federal claims against all defendants under Section 1983 for violations of the First Amendment (Claim One), Fourth Amendment (Claim Two), and Fourteenth Amendment (Claim Three).  *Id*. ¶¶ 51-56.  Plaintiffs also bring state claims against various defendants for violations of California Education Code § 66301 (Claim Four) and California Civil Code §§ 51.7, 52.1 (Claims Seven and Eight) and for false arrest (Claim Five), false imprisonment (Claim Six), and negligence (Claim Nine).  *Id*. ¶¶ 57-71.  The Community College defendants moved to dismiss all claims against them.  Dkt. 17, Defs.' Mot. to Dismiss at 1.  The SF City defendants joined in portions of the motion.  Dkt. 20, Defs.' Joinder.

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. Pro. 8(a)(2), and a complaint that fails to do so is subject to dismissal pursuant to Rule 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff

must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

In reviewing a Rule 12(b)(6) motion, a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff. *See al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009). However, a district court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the Court dismisses a complaint, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

### I.     Eleventh Amendment

The Community College defendants move to dismiss on grounds that plaintiff's claims against the District and against Chancellor Tyler and Chief Barnes of CCSF PD in their official capacities are barred by the Eleventh Amendment. The Eleventh Amendment prohibits federal

5

courts from hearing federal and state claims brought against a state, including an "arm of the state" such as a state agent or agency.  *See, e.g.*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1422–23 (9th Cir. 1991) ("the Supreme Court has judicially extended [the Eleventh Amendment's] reach to bar federal courts from deciding virtually any case in which a state or the 'arm of a state' is a defendant – even where jurisdiction is predicated upon a federal question – unless the state has affirmatively consented to suit").   The Ninth Circuit has made clear that "community college districts are dependent instrumentalities of the state of California" and are thus entitled to Eleventh Amendment immunity.  *Cerrato v. San Francisco Cmty. Coll. Dist.*, 26 F.3d 968, 972-73 (9th Cir. 1994). Accordingly, this Court lacks jurisdiction to hear plaintiffs' Section 1983 claims and state law claims against the District and GRANTS defendants' motion to dismiss all claims against the District without leave to amend.

"[C]laims against District administrators in their official capacities are analogous to suits against the District itself, with such claims also being entitled to Eleventh Amendment protection." *Everett H. v. Dry Creek Joint Elementary Sch. Dist.*, 5 F. Supp. 3d 1167, 1179 (E.D. Cal. 2014) (citing *Will v. Mich. Dept. of State Police,* 491 U.S. 58, 71 (1989)).  The Eleventh Amendment "bars suits in federal court, for both retrospective and prospective relief, brought against state officials acting in their *official* capacities alleging a violation of state law."  *Pena v. Gardner*, 976 F.2d 469, 473 (9th Cir. 1992), as amended (Oct. 9, 1992) (citing *Pennhurst*, 465 U.S. at 106) (emphasis in original).   However, the Eleventh Amendment permits a federal court to grant prospective injunctive relief against a state official in his or her official capacity for violations of the Constitution or federal law.  *Cerrato*, 26 F.3d at 972-73 (citing *Ex Parte Young*, 209 U.S. 123 (1908)).  Here, plaintiffs have alleged that defendants Chancellor Tyler and Chief Barnes of CCSF PD violated plaintiffs' Constitutional rights by giving orders and supervising the alleged police misconduct and by retaliating and deterring plaintiffs' First Amendment expression.  FAC ¶¶ 19, 20.  Furthermore, plaintiffs have specified that they are suing defendants Chancellor Tyler and Chief Barnes of CCSF PD "in their official capacities for purposes of the claims for injunctive and

declaratory relief, only." *Id.* ¶ 24. Accordingly, the Court has jurisdiction to hear plaintiff's claims against defendants Chancellor Tyler and Chief Barnes of CCSF PD – in their official capacities – to the extent that plaintiffs ask for prospective injunctive relief for violations of federal law.

In addition, the Eleventh Amendment does not bar claims for money damages against state officials in their individual capacities. *See Cerrato*, 26 F.3d at 973. "Personal-capacity suits seek to impose *personal liability* upon a government official for actions he takes under color of state law." *Kentucky v. Graham,* 473 U.S. 159, 159 (1985) (emphasis added). A victory in such a suit is a "victory against the individual defendant, rather than against the entity that employs him." *Id.* at 167–68. Thus, the Eleventh Amendment's prohibition against monetary damages imposed on a claim against a state does not apply to such suits. *Cerrato*, 26 F.3d at 973. Here, plaintiffs have sued defendants Chancellor Tyler and Chief Barnes "for damages in their individual capacities, only." Dkt. 12, Pls.' FAC ¶ 24. Accordingly, the Court allows plaintiffs' claims for money damages against defendants Chancellor Tyler and Chief Barnes of CCSF PD but only in their individual capacities.

## II.     42 U.S.C. § 1983 Claims Against Individual Defendants

Under section 1983, a person may bring an action against a government employee who, acting under color of law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver,* 510 U.S. 266, 271 (1994). Plaintiffs' complaint alleges that all individual defendants violated plaintiffs' rights under the First, Fourth, and Fourteenth Amendment. Defendants move to dismiss all of plaintiffs' Section 1983 claims.

///

United States District Court
Northern District of California

## A.  Fourth Amendment (Claim One)

As to plaintiffs' Fourth Amendment claims, the individual defendants fall into two categories.  FAC ¶ 45.  First, plaintiffs allege that Officer Lim of SFPD, Sergeant Gaytan of CCSF PD, and Officers Torres, Boyko, and McGlaston of CCSF PD violated plaintiffs' Fourth Amendment rights based on excessive force and unlawful arrest during and following the student protest.  *Id.* ¶ 44, 45.  Second, plaintiffs allege that Chancellor Tyler, Chief Barnes of CCSF PD, Lieutenant Wendt of CCSF PD, Sergeant Quintana of CCSF PD, Chief Suhr of SFPD, and Sergeant Kumli of SFPD violated plaintiffs' Fourth Amendment rights based on supervisory liability.  *Id.*  Defendants contend that plaintiffs have failed to allege sufficient facts to support their Fourth Amendment claims.

### i.  Excessive Force

Defendants move to dismiss plaintiffs' Fourth Amendment claims for excessive force and unlawful arrest against Officer Lim of SFPD, Sergeant Gaytan of CCSF PD, and Officers Julie Torres, Igor Boyko, and E. McGlaston of CCSF PD.  However, the Court finds that plaintiffs have adequately pled Fourth Amendment claims for excessive force and unlawful arrest against these defendants.

A claim against law enforcement officers for use of excessive force is analyzed under the Fourth Amendment's "objective reasonableness" standard.  *See Graham v. Connor,* 490 U.S. 386, 388 (1989).  "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Id.* at 396 (quotation omitted).  An excessive force analysis requires evaluating "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

Here, plaintiffs alleged that SFPD and CCSF PD officers responded with "unnecessary and

United States District Court
Northern District of California

United States District Court
Northern District of California

1  excessive force, shoving and hitting numerous students" as protesters attempted to enter Conlan

2  Hall to demand a meeting with Chancellor Tyler and to conduct a peaceful sit-in.  FAC ¶ 31.

3  Pippenger alleges that he suffered multiple injuries from Officer Lim of SFPD, Sergeant Gaytan of

4  CCSF PD, and Officers Julie Torres, Igor Boyko, and E. McGlaston of CCSF PD.  *Id*. ¶¶ 32-34.

5  Defendant Sergeant Carlos Gaytan of CCSF PD struck plaintiff Pippenger's wrists at least seven

6  times, fracturing both wrists.  *Id*. ¶ 32.  Defendant Officer Oliver Lim of SFPD "body slammed"

7  Pippenger to the ground, restrained him, punched him in the back of the head, and smashed his

8  face into the ground, giving him a concussion.  *Id*. ¶ 33.  Pippenger alleges that on the day of the

9  demonstration, he did not present a threat or do anything to justify the excessive force that

10  defendants used on him.  *Id*. ¶ 40.  Assuming the truth of plaintiffs' allegations, the Court finds

11  that plaintiffs have stated a plausible claim for excessive force against Officer Lim of SFPD and

12  Sergeant Gaytan of CCSF PD.  *See, e.g.*, *Drummond ex rel. Drummond v. City of Anaheim*, 343

13  F.3d 1052 (9th Cir. 2003) (restraining plaintiff by putting weight on his back and neck constituted

14  excessive force).

15       Defendants contend that Officers Torres, Boyko, and McGlaston of CCSF PD did not use

16  excessive force on grounds that carrying Pippenger upstairs by his fractured wrists did not

17  constitute excessive force.  Dkt. 17, Defs.' at 14.  Defendants argue that "there are no facts . . . that

18  [plaintiff] Pippenger told any . . . defendant that he was injured, appeared injured, cried out in pain

19  when carried up the stairs by the officers or asked for medical attention."  *Id*.  However, plaintiffs

20  allege that Sergeant Gaytan struck plaintiff Pippenger's wrists enough to fracture both wrists

21  before Officers Torres, Boyko, and McGlaston accompanied Sergeant Gaytan in carrying plaintiff

22  up the stairs by his fractured wrists to detain him at an administrator's office.  *Id*. ¶¶ 34, 35.  Based

23  on the facts alleged, it is plausible that Officers Torres, Boyko, and McGlaston had notice of

24  plaintiff Pippenger's injuries and thus subjected plaintiff to further injuries by carrying plaintiff by

25  his fractured wrists.  *Cf. Wall v. County of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004) ("overly

26  tight handcuffing can constitute excessive force").  Thus, as to plaintiffs' claim for excessive

27  force, the Court finds that plaintiffs have sufficiently stated a claim against Officers Julie Torres,

28

1    Igor Boyko, and E. McGlaston of CCSF PD.

2

3            **ii.  Unlawful Arrest**

4            To state a Fourth Amendment claim for unlawful arrest, plaintiffs must allege facts

5    showing that "the arrest was without probable cause or other justification."  *Dubner v. City and*

6    *Cnty. of San Francisco,* 266 F.3d 959, 964–965 (9th Cir. 2001).  "Under the Fourth Amendment, a

7    warrantless arrest requires probable cause."  *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir.

8    2007).   There is probable cause when, "under the totality of the circumstances known to the

9    arresting officers, a prudent person would have concluded that there was a fair probability that [the

10   defendant] had committed a crime."  *Id.* (quoting *United States v. Smith*, 790 F.2d 789, 792 (9th

11   Cir. 1986)).  "[A] warrantless arrest satisfies the Constitution so long as the officer has 'probable

12   cause to believe that the suspect has committed or is committing an offense.'"  *Virginia v. Moore*,

13   553 U.S. 164, 173 (2008) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979)).

14           Here, plaintiffs allege that defendants seized and detained Pippenger for attempting to

15   enter Conlan Hall, even though Pippenger did not present a threat, and that defendants caused him

16   to be booked into the San Francisco Jail for resisting or interfering with an officer (Cal. Penal

17   Code § 148) and battery on a peace officer (Cal. Penal Code § 243).  *Id.* ¶¶ 4, 31, 37, 40.

18   Pippenger alleges that he did not violate either criminal statute and that there was no probable

19   cause for defendants to believe that plaintiff had violated the law.[5]  *Id.* ¶ 41.  Given the allegations

20   in the FAC that plaintiffs were involved in a peaceful and organized rally and that Pippenger did

21   not resist, interfere, or engage in battery, it is plausible that Pippenger was detained and arrested

22   without probable cause.  Although evidence presented at later stages of litigation may prove or

23   disprove plaintiffs' allegations, plaintiffs' allegations are sufficient, for purposes of the pleading

24   stage, to establish an unlawful arrest claim against defendants Officer Lim of SFPD, Sergeant

25   _____

26   [5] Pippenger also allege that he was forced to retain counsel to defend against the potential criminal
     charges, but neither he nor any other student has been charged with any crime arising from the
27   demonstration.  *Id.* ¶ 39.

28

United States District Court
Northern District of California

1    Gaytan of CCSF PD, and Officers Julie Torres, Igor Boyko, and E. McGlaston of CCSF PD.

2         Drawing all facts and reasonable inferences in plaintiffs' favor, the Court finds that

3    plaintiffs have sufficiently pled a cause of action under the Fourth Amendment for excessive force

4    and unlawful arrest against Officer Lim of SFPD, Sergeant Gaytan of CCSF PD, and Officers

5    Julie Torres, Igor Boyko, and E. McGlaston of CCSF PD.  Accordingly, defendants' motion as to

6    plaintiffs' Fourth Amendment claims against these defendants is DENIED.

7

8              **iii. Fourth Amendment claims based on supervisory liability**

9         Defendants move to dismiss plaintiffs' Fourth Amendment claims based on supervisory

10   liability against defendants Chief Suhr of SFPD, Sergeant Kumli of SFPD, Chief Barnes of CCSF

11   PD, Lieutenant Wendt of CCSF PD, Sergeant Quintana of CCSF PD, Sergeant Gaytan of CCSF

12   PD, and Chancellor Tyler.  Plaintiffs allege that these defendants have supervisory responsibilities

13   within SFPD, CCSF PD, or CCSF, thereby making them liable for the allegedly unconstitutional

14   police conduct.  FAC  ¶¶ 18-20, 45.  Defendants contend that plaintiffs have not adequately pled

15   Fourth Amendment claims based on supervisory liability against these defendants.

16        In a Section 1983 action – "where masters do not answer for the torts of their servants –

17   the term 'supervisory liability' is a misnomer[,] . . . [and] each Government official . . . is only

18   liable for his or her own misconduct."  *Iqbal*, 556 U.S. at 677.  Although Section 1983 does not

19   allow for *respondeat superior* liability, *Chavez v. U.S.*, 683 F.3d 1102, 1109 (9th Cir. 2012) (citing

20   *Iqbal*, 556 U.S. at 676), a defendant may be held liable as a supervisor under § 1983 "if there

21   exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a

22   sufficient causal connection between the supervisor's wrongful conduct and the constitutional

23   violation."  *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (citing *Hansen v. Black,* 885 F.2d

24   642, 646 (9th Cir.1989)).  To be held liable, the supervisor defendant need not be "directly and

25   personally involved in the same way as are the individual officers who are on the scene inflicting

26   constitutional injury."  *Starr v. Baca*, 652 F.3d at 1205 (citing *Larez v. City of Los Angeles,* 946

27   F.2d 630, 645 (9th Cir.1991).  Rather, the Ninth Circuit has found that a supervisor can be held

28

United States District Court
Northern District of California

liable based on the following theories: (1) by "setting in motion a series of acts by others . . . or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury"; (2) for the supervisor's "own culpable action or inaction in the training, supervision, or control of his subordinates"; (3) for "his acquiescence in the constitutional deprivations of which the complaint is made"; or (4) for "conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1205-1208 (internal citations, quotation marks, and alterations omitted). Moreover, because of qualified immunity protection, "a supervisor faces liability under the Fourth Amendment only where it would be clear to a reasonable supervisor that his conduct was unlawful in the situation he confronted." *Chavez v. U.S.*, 683 F.3d 1102, 1110 (9th Cir. 2012). "A lower standard would impose vicarious liability on supervisors based on their subordinates' clearly unlawful conduct." *Id.*

The Court finds that plaintiffs have not pled specific facts to support a theory of supervisory liability. Plaintiffs have failed to allege specific facts that establish the defendants' involvement in the constitutional injury or that establish a causal connection between the supervisor's conduct and the constitutional violation. *See Starr v. Baca*, 652 F.3d at 1207. Plaintiffs alleged that Chief Suhr of SFPD, Sergeant Kumli of SFPD, Chief Barnes of CCSF PD, Lieutenant Wendt of CCSF PD, and Sergeant Quintana of CCSF PD "participated in the supervision of the police conduct complained of." FAC ¶¶ 18-19. However, plaintiffs have not alleged why defendants' general supervisory responsibilities would lead to a conclusion the supervisors knew about the alleged police misconduct. *See Chavez v. U.S.*, 683 F.3d at 1110-1111. There are no facts specifying whether the supervisor defendants were present at the scene of the police conduct,[6] whether there had been similar misconduct in the past to put the supervisors on notice, or whether the supervisor defendants were even aware of the alleged misconduct at issue. At various places in their Opposition, plaintiffs note that of the supervisor

---

[6] Except for Sergeant Gaytan, who faces liability for his direct participation in the alleged misconduct. *See* Section ii., *supra.*

defendants were "personally present at the scene," Dkt. 31, Pls.' Opp. at 11, but plaintiffs' FAC does not allege how and to what extent the supervisors were connected to the alleged misconduct.

Furthermore, as to the supervisory liability claim against Chancellor Tyler, plaintiffs alleged that Chancellor Tyler "gave orders which led to the unconstitutional police conduct complained of," FAC ¶ 20, but there are no facts alleged as to whether Chancellor Tyler was aware of the police conduct or whether Chancellor Tyler ordered the police or allowed the police to continue with the use of force and arrests during the protest. *See Felarca v. Birgeneau*, No. 11-cv-5719-YGR, 2014 WL 206762, at *5 (N.D. Cal. Jan. 17, 2014) (holding that the plaintiffs alleged sufficient facts to support Fourth Amendment supervisory liability claims based on the defendants being aware that police had injured protestors and ordering police to use force and arrests not warranted under the circumstances). The Ninth Circuit allows for actions against supervisors "as long as a sufficient causal connection is present," *Starr v. Baca*, 652 F.3d at 1207, but here, plaintiffs failed to allege facts that create a causal connection between Chancellor Tyler's instructions to the SFPD and CCSF PD to keep protestors from entering Conlan Hall and the alleged excessive force and unlawful arrest that resulted.

As to all supervisor defendants, plaintiffs merely alleged that the supervisors "caused the violation of plaintiffs' constitutional rights as a result of their supervisory malfeasance and/or deliberate indifference to the need for more or different training, supervision, and/or discipline of the CCSF PD and SFPD personnel assigned to the subject incident." FAC ¶ 45. Such general allegations are insufficient to create an inference of supervisory liability under Section 1983. *See Chavez v. U.S.*, 683 F.3d at 1110 (the Ninth Circuit found that the plaintiffs' allegation that the supervisors "personally reviewed and, thus, knowingly ordered, directed, sanctioned, or permitted" the allegedly unconstitutional conduct was "wholly conclusory"). Accordingly, defendants' motion to dismiss plaintiffs' Fourth Amendment claims against Chief Suhr, Sergeant Kumli, Chief Barnes, Lieutenant Wendt, Sergeant Quintana, and Chancellor Tyler is GRANTED with leave to amend.

**B.  First Amendment (Claim Two)**

Defendants move to dismiss plaintiff's First Amendment claims against all individual defendants.   To state a claim for First Amendment violation, a plaintiff must show that "(1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct."   *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006); *see also Skoog v. Cnty. of Clackamas*, 469 F.3d 1221, 1232 (9th Cir. 2006).

**i.   Plaintiffs have pled sufficient facts for the Court to infer that plaintiffs were engaged in constitutionally protected speech**

To meet the first element of a First Amendment claim, plaintiffs must allege that they were engaged in constitutionally protected activity. *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d at 770. The parties do not dispute whether the content of plaintiffs' speech and association is entitled to First Amendment protection.  Here, plaintiffs were protesting to express concerns over the loss of the school's accreditation, to call for the resignation of a trustee, and to respond to cuts in the school's programs and services, changes to the tuition policy, layoffs, and pay cuts.  Dkt. 12, Pls.' FAC  ¶¶ 2, 14, 29.  Activities such as demonstrations, protest marches, and picketing are the sort of speech protected by the First Amendment.  *Collin v. Jordan*, 110 F.3d 1363, 1371 (9th Cir. 1996).  Defendants do not raise issue with the content of plaintiffs' activities.  Rather, defendants' main contention is that plaintiffs were not engaged in constitutionally protected activity because "Conlan Hall is not a designated Free Speech Area."  Dkt. 17, Defs.' Mot. to Dismiss at 15.

Essentially, defendants are arguing that Conlan Hall is a non-public forum, and thus, plaintiffs did not have First Amendment rights to protest at Conlan Hall.  *Id*. at 16-17.  "The First Amendment does not guarantee access to property simply because it is owned or controlled by the government or the state."  *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,* 473 U.S. 788, 803 (1985).  In order to determine the extent of First Amendment protection, the Court must "identify the nature of the forum, because the extent to which the Government may limit access depends on

whether the forum is public or nonpublic." *Preminger v. Principi*, 422 F.3d 815, 823 (9th Cir. 2005) (citing *Cornelius*, 473 U.S. at 800). Public property, depending on its character, falls within one of three main categories for purposes of First Amendment analysis. *Id.* *Public fora* are places, such as streets and parks, that have traditionally been devoted to expressive activity. *Id.* (citing *Perry Educ. Ass'n. v. Perry Local Educators' Ass'n.,* 460 U.S. 37, 45 (1983)). Content-based restrictions in public fora are justified only if they serve a compelling state interest that is narrowly tailored to the desired end. *Id.* *Designated public fora* are areas that the government affirmatively has opened to expressive activity, and exclusion from these fora must also satisfy strict scrutiny. *Id.* *Nonpublic fora,* areas that have not traditionally or explicitly been open to expressive activity, are subject to a more lenient standard. *Id.* Content-based restrictions in nonpublic fora need only be "reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Id.*

Parties dispute whether Conlan Hall is a designated public forum or a non-public forum. Defendants' rely on CCSF's Rules and Regulations to argue that Conlan Hall is a non-public forum. The relevant provision of CCSF's Rules and Regulations states:

> The designated areas for solicitors to table, set up displays, seek signatures on a petition and/or engage in public address at Ocean Campus are RAM PLAZA . . . , the CLOUD SCIENCE MALL . . . , and the WELLNESS CENTER AMPHITHEATRE . . . The solicitor must REMAIN in these specified areas only.

Dkt. 17, Defs.' Mot. to Dismiss at 8;  Request for Judicial Notice Exhibit 1 and 2. Based on this provision, defendants contend that Conlan Hall is not a "Free Speech Area"[7] and thus, CCSF did not intend for Conlan Hall to be a public forum. Plaintiffs respond that the provision cited by defendants is directed only to "solicitors," which is defined in the Rules and Regulations as "members of the public" and "off-campus organizations." Dkt. 31, Pls.' Opp at 14; RJN Exhibit A at 10. Plaintiffs argue that students, staff, and faculty of CCSF, such as plaintiffs, should not be restricted by a provision that is directed at solicitors.

---

[7] "Free Speech Area" is a phrase used by defendants and does not actually appear in the CCSF Rules and Regulations.

United States District Court
Northern District of California

15

On the face of the complaint, the Court cannot infer that Conlan Hall is a designated public forum.   In order to create a *designated* public forum,[8] the government must have acted intentionally to open up the space for public discourse.  *Id.*  "The government does not create a designated public forum by inaction or by permitting limited discourse."   *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677 (1998) (citing *Cornelius*, 473 U.S. at 802). Here, plaintiffs failed to plead facts showing that CCSF intended to designate Conlan Hall as a public forum.  Plaintiffs' allege that a year prior to the protest at issue, students had held a peaceful sit-in at Conlan Hall without any intervention by the police or administration and that Conlan Hall was open, with students and staff inside, at the time of the protest.  FAC ¶¶ 29, 30. Plaintiffs' allegations are insufficient to show that CCSF's policy for Conlan Hall indicates a clear intent to designate it as a public forum.  *Compare Cornelius*, 473 U.S. at 804 (finding that the government's policy of selectively limiting access to a charity drive was inconsistent with an intent to create a public forum) *with Widmar v. Vincent*, 454 U.S. 263, 265, 267-68 (1981) (holding that a university's policy of making meeting facilities available for registered student organizations created a public forum).  Furthermore, plaintiffs do not allege facts showing how the nature of Conlan Hall as "the college administration building"[9] is compatible with expressive activities and public discourse.  *See Cornelius*, 473 U.S. at 802 (examining "the nature of the property and its compatibility with expressive activity to discern the government's intent"); *see also Preminger*, 422 F.3d at 824 (holding that a facility providing veterans with long-term nursing care is not a public forum because the purpose of the building is not to facilitate public discourse). Based on plaintiffs' allegations, the Court cannot infer that Conlan Hall is a designated public forum.

---

[8] Conlan Hall is not a *traditional* public forum.  The Supreme Court has consistently allowed universities' authorities to impose reasonable regulations compatible with its mission of education "upon the use of its campus and facilities . . . [and has never held] that a university must grant access to all of its grounds or buildings."  *Widmar*, 454 U.S. at 267 n. 5.

[9] In their Opposition, plaintiffs state that Conlan Hall is "the college administration building." Dkt. 31, Pls.' Opp. at 16.

United States District Court
Northern District of California

However, even if Conlan Hall is considered a non-public forum, restrictions on non-public fora are Constitutional only if they are (1) reasonable in light of the purpose served by the forum, and (2) viewpoint neutral. *See Cornelius,* 473 U.S. at 806.  Public officials cannot suppress expression in a non-public forum merely because they oppose the speaker's view. *Preminger v. Principi*, 422 F.3d at 823.  Here, plaintiffs have pled facts that give rise to the inference that defendants prohibited plaintiffs' speech and activities merely because defendants disagreed with plaintiffs' views.  At the time of the protest, other students and staff were inside Conlan Hall, yet Chancellor Tyler ordered SFPD and CCSF PD to block entry to the protestors only.  Furthermore, a year prior to the protest, students were permitted to conduct a peaceful sit-in at Conlan Hall.  Plaintiffs' allegations support a plausible claim that defendants' restrictions were not viewpoint neutral and that defendants restricted plaintiffs' activities because defendants opposed plaintiffs' views. *Cf. Perry Educ. Assn.,* 460 U.S. at 49 (noting that a school board's decision to limit union access to a school's internal mail system was viewpoint neutral because all unions were excluded and there was no indication that the policy was implemented to suppress a particular message).  Accordingly, drawing all facts and reasonable inferences in plaintiffs' favor, the Court finds that plaintiffs have sufficiently facts pled that plaintiffs were engaging in constitutionally protected activities.

### ii.  Second element and third element of First Amendment

In addition to showing that plaintiffs were engaged in constitutionally protected activity, plaintiffs must also plead facts to show that the defendants' actions would chill a person of ordinary firmness from continuing to engage in the protected activity and that the protected activity was a substantial or motivating factor in the defendant's conduct. *See Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006).  Here, the Court finds that plaintiffs have alleged sufficient facts for the second and third element of their First Amendment claims against all individual defendants except Chief Suhr of SFPD, Sergeant Kumli of SFPD, Chief Barnes of CCSF PD, Lieutenant Wendt of CCSF PD, and Sergeant Quintana of CCSF PD.

As to the defendants who were involved in the alleged police misconduct, Officer Lim of SFPD, Sergeant Gaytan of CCSF PD, and Officers Julie Torres, Igor Boyko, and E. McGlaston of CCSF PD, plaintiffs have alleged sufficient facts to meet the second and third element of a First Amendment violation.  The Ninth Circuit has "recognized that a retaliatory police action such as an arrest or search and seizure would chill a person of ordinary firmness from engaging in future First Amendment activity."  *Ford v. City of Yakima*, 706 F.3d 1188, 1193 (9th Cir. 2013).   The Court has already determined the sufficiency of plaintiffs' allegations of excessive force and unlawful arrest against Officer Lim, Sergeant Gaytan, and Officers Julie Torres, Igor Boyko, and E. McGlaston with respect to plaintiffs' Fourth Amendment claim.   Furthermore, based on plaintiffs' allegations that these defendants were responding to defendant Chancellor Tyler's orders to keep the protesters out of Conlan Hall, while non-protesters were permitted inside, plaintiffs have alleged sufficient facts to infer that plaintiffs' association with the protest was a substantial or motivating factor for defendants' actions.   Taking the facts alleged as true and drawing all reasonable inferences in plaintiffs' favor, the Court finds that plaintiffs have stated a First Amendment claim against Officer Lim, Sergeant Gaytan, and Officers Julie Torres, Igor Boyko, and E. McGlaston, the defendants who were involved in the alleged police misconduct. Defendants' motion to dismiss is DENIED as to the First Amendment claims as to these defendants.

As to defendant Chancellor Tyler, plaintiffs alleged that defendant gave orders to SFPD and CCSF PD to block plaintiffs from entering Conlan Hall, which resulted in the alleged police misconduct, and that defendant issued a public statement, falsely stating that the student protestors had engaged in "violent outbursts," that a student, impliedly plaintiff Pippenger, "was witnessed striking an SFPD police officer."  FAC ¶¶  4, 38.  Plaintiffs alleged that during the protest, other students and staff were inside Conlan Hall, and that Chancellor Tyler specifically ordered the officers to keep plaintiffs from entering.  Plaintiffs also alleged that a year earlier, a peaceful sit-in was conducted at Conlan Hall.  Based on plaintiffs' allegations, it is plausible that Chancellor Tyler's orders would prevent plaintiffs from engaging in First Amendment activity in Conlan Hall

United States District Court
Northern District of California

and that his orders were motivated by plaintiffs' demand for a meeting.  Evidence at a later stage of litigation could reveal that defendant Chancellor Tyler had other legitimate reasons for restricting plaintiffs' speech or that his desire to cause a chilling effect was not a but-for cause of his actions.  *See Healy v. James*, 408 U.S. 169, 184 (1972) (a college has a "legitimate interest in preventing disruption on the campus"); *see Skoog v. Cnty. of Clackamas*, 469 F.3d 1221, 1231-32 (9th Cir. 2006) (plaintiff must prove that the defendant's "desire to cause the chilling effect was a but-for cause of the defendant' action").  However, at the pleading stage, the Court finds that plaintiffs have alleged sufficient facts to state a First Amendment claim against defendant Chancellor Tyler.  Defendants' motion to dismiss is DENIED as to the First Amendment claim against defendant Chancellor Tyler.

Finally, as to defendants Chief Suhr of SFPD, Sergeant Kumli of SFPD, Chief Barnes of CCSF PD, Lieutenant Wendt of CCSF PD, and Sergeant Quintana of CCSF PD, plaintiffs have not alleged sufficient facts to state a First Amendment claim on the same grounds as plaintiffs' failure to state a Fourth Amendment claim for supervisory liability.  Plaintiffs have only alleged that these defendants have general supervisory responsibilities and "participated in the supervision of the police conduct complained of."  FAC ¶¶ 18-19.  Plaintiffs' allegation that the supervisory police defendants "acted . . . in concert with" the other police defendants and defendant Chancellor Tyler do not cure this deficiency.  Accordingly, plaintiffs have failed to state a First Amendment claim against defendants Chief Suhr, Sergeant Kumli, Chief Barnes, Lieutenant Wendt, and Sergeant Quintana, and defendants' motion to dismiss is GRANT as to plaintiffs' First Amendment claims against these defendants with leave to amend.

### iii.  Standing for injunctive relief

In addition to damages, plaintiffs request injunctive relief for their First Amendment claim.  FAC ¶ 48.[10]  Specifically, plaintiffs "seek to enjoin the use of excessive force, wrongful arrest, and

---

[10] Plaintiffs focus their argument for injunctive relief on their First Amendment claim.  Dkt. 31, Pls.' Opp. at 25.  It is unclear whether plaintiffs also seek injunctive relief for their Fourth Amendment claims.  However, all supervisory/official defendants have been dismissed from

United States District Court
Northern District of California

threats of student discipline to chill their freedom of speech on campus." Dkt. 31, Pls.' Opp. at 25. As discussed above, Chancellor Tyler may be sued in his official capacity – as an administrator for the District – for prospective injunctive relief on violations of federal law.  Defendants argue that plaintiffs do not have standing to seek injunctive relief.  To have standing for injunctive relief, a plaintiff must allege that a "real or immediate threat" exists that he will be wronged again.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).  The "threatened injury must be certainly impending to constitute injury in fact, and allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (internal citations omitted).  Rather than requiring literal certainty, the Supreme Court has sometimes framed the injury requirement as a "substantial risk" that the harm will occur.  *Munns v. Kerry*, 782 F.3d 402, 409 (9th Cir. 2015) (citing *Clapper v. Amnesty Int'l USA*, 133 S. Ct. at 1150 n.5).  The alleged threat cannot be "conjectural" or "hypothetical," *Lyons*, 461 U.S. at 101-02, but must be a "credible threat of future injury," *The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 528-29 (9th Cir. 1989) (quotation marks and citations omitted).  "[P]ast exposure to illegal conduct does not in itself show a present case or controversy . . . if unaccompanied by any continuing, present adverse effects."  *Cuviello v. City & Cnty. of San Francisco*, 940 F. Supp. 2d 1071, 1080 (N.D. Cal. 2013) (citing *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).  A plaintiff "must demonstrate that [he is] realistically threatened by a *repetition* of the violation" at issue.  *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (quotation marks and citations omitted, emphasis in original).

Here, in addition to alleging past unconstitutional conduct, plaintiffs alleged current threats to plaintiffs' First Amendment rights.  Plaintiffs have alleged that they wish to engage in, and associate with, "similar peaceable expressive activity" in the future, but are concerned that they may be subjected to unlawful violence and arrest or disciplinary sanctions from the school's administration.  FAC ¶ 39, 43.  In addition to potential criminal charges, plaintiffs alleged that the CCSF administration stated that plaintiffs would be subjected to disciplinary sanctions related to

---

plaintiffs' Fourth Amendment claims, and plaintiffs no longer have a Fourth Amendment claim against a defendant in his official capacity.

the demonstration. *Id.* The Court recognizes that plaintiffs do not allege specific facts as to when they plan to engage in their next expressive activity or whether they plan to protest at Conlan Hall. However, considering the allegation that plaintiff Save CCSF has been organizing and advocating since 2012, it is plausible that plaintiffs are presently unable to engage in First Amendment activities due to fear of arrest or sanctions and that plaintiffs will be subjected to similar alleged misconduct if they attempt to engage in expressive activity, related to plaintiff Save CCSF's agenda, at Conlan Hall.

Moreover, in their reply, the Community College defendants adhere to the view that CCSF regulations prohibiting *solicitors* at Conlan Hall make Conlan Hall "off limits" to plaintiffs' First Amendment rights. Dkt. 34, Defs.' Reply at 12. CCSF's regulations as to solicitation on campus are unclear as to the extent of students' First Amendment rights, which supports the plaintiffs' claim that "defendants' conduct . . . has created fear, anxiety, and uncertainty among plaintiffs . . . with respect to their exercise now and in the future of these constitutional rights." FAC ¶ 48. It is plausible that CCSF intends to use its regulations to justify ordering officers at the scene the next time plaintiffs' attempt to enter Conlan Hall to advocate their views. *See White v. Lee,* 227 F.3d 1214, 1242 (9th Cir.2000) (finding that allegations showing plaintiffs' desire "to continue to be vocal opponents of government housing projects" and the continued efforts of the housing department officials "to pursue and regulate protected speech" established "a likelihood of future injury" sufficient to give the plaintiffs standing to seek declaratory and injunctive relief[11]). Taking all of plaintiffs' allegations as true, the Court finds that plaintiffs have standing for injunctive relief on their First Amendment claim.

### C.  Fourteenth Amendment (Claim Three)

Defendants moves to dismiss plaintiffs' Fourteenth Amendment Claims. Plaintiff alleges

---

[11] While the Ninth Circuit found that the plaintiffs' had standing at the start of litigation, the Court ruled that plaintiffs' claim for injunctive relief became moot due to the defendants' subsequent implementation of a new policy. *White v. Lee,* 227 F.3d at 1243-44.

United States District Court
Northern District of California

that defendants' conduct "violated plaintiffs' rights to not be deprived of liberty without due process of law, and to equal protection of the laws, and to personal liberty and freedom of movement, under the Fourteenth Amendment."  Dkt. 12, Pls.' FAC ¶ 56.  However, plaintiffs fail to specify what grounds their Fourteenth Amendment claims are based on.  It is unclear what specific actions support plaintiffs' Fourteenth Amendment contentions, and the FAC fails to allege facts to support plaintiffs' claims.  Moreover, plaintiffs do not address or clarify their Fourteenth Amendment claims in their Opposition.  Dkt. 31, Pls's Opp.  Accordingly, defendants' motion is GRANTED as to plaintiff's Fourteenth Amendment claims with leave to amend.

### D.  Qualified Immunity

Defendants argue that, even if plaintiffs' allegations are sufficient to state constitutional violations, Chancellor Tyler and Chief Barnes are entitled to qualified immunity from plaintiffs' claims for damages.[12]  As the Court has dismissed all Section 1983 claims against Chief Barnes, the Court does not need to discuss whether Chief Barnes is entitled to qualified immunity.  As to defendant Chancellor Tyler, the Court has dismissed all Section 1983 claims against Chancellor Tyler except plaintiffs' First Amendment claim.  Thus, the Court will consider whether plaintiffs' allegations are sufficient to overcome the qualified immunity bar as to plaintiffs' First Amendment claim for damages against Chancellor Tyler

Qualified immunity shields government officials from personal liability for civil damages when they have not violated a "clearly established" constitutional right.  *Camreta v. Greene*, 131 S.Ct. 2020, 2030–31 (2011).  In determining whether qualified immunity applies at the motion to dismiss stage, courts consider (1) "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right"; and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  *Pearson v. Callahan*, 555 U.S. 223, 232, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150

---

[12] Defendants do not raise qualified immunity defenses as to the other defendants.

L.Ed.2d 272 (2001)).   Here, plaintiffs' allegations are sufficient to support an inference that Chancellor Tyler violated plaintiffs' First Amendment rights.

Thus, the relevant inquiry is whether plaintiffs pled facts to support that their First Amendment right was "clearly established" at the time of the alleged misconduct.  This inquiry contains its own two-part inquiry, asking whether (1) "the law governing the state official's conduct [was] clearly established"; and (2) "[u]nder that law . . . a reasonable state official [could] have believed his conduct was lawful."  *Estate of Ford v. Ramirez–Palmer*, 301 F.3d 1043, 1050 (9th Cir. 2002).  As for whether the law was clearly established, a case directly on point is not required if existing precedent places the statutory or constitutional question of the particular right at issue beyond debate.  *Ashcroft v. Al–Kidd*, 131 S.Ct. 2074, 2083 (2011).

Defendants argue that "plaintiffs did not have a clearly established First Amendment right to occupy Conlan Hall" because "[CCSF] regulations clearly indicat[e] that Conlan Hall was not included in the designated Free Speech Areas of campus."  Dkt. 17, Defs.' Mot. to Dismiss.  However, even under the assumption that Conlan Hall is a non-public forum, the Supreme Court and the Ninth Circuit have clearly established that a government's restrictions on a non-public forum are Constitutional only if the restrictions are "reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view."  *Preminger*, 422 F.3d at 823 (citing *Perry Educ. Ass'n.,* 460 U.S. at 46). At the pleading stage, plaintiffs have alleged sufficient facts to avoid a qualified immunity bar of their First Amendment claims for damages against Chancellor Tyler.  Furthermore, the Court notes that, due to the fact-specific nature of the inquiry, it is generally improper to dismiss a claim at the pleading stage based on qualified immunity.  *Everett H. ex rel. Havey v. Dry Creek Joint Elementary Sch. Dist.*, 5 F. Supp. 3d 1184, 1197 (E.D. Cal. 2014) (citing *see, e.g.*, *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *St. George v. Pinellas Cnty.,* 285 F.3d 1334, 1337 (11th Cir.2002)).

*///*

United States District Court
Northern District of California

23

**III.      42 U.S.C. § 1983 *Monell* Claim Against Defendant City**

Defendants move to dismiss plaintiffs' *Monell* claim against City.[13]  "Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury."  *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011) (quoting *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978)).  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  *Id.*  "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  In order for municipal liability to attach, the failure to train must reflect "a 'deliberate' or 'conscious' choice by a municipality."  *Id.* at 389.  Such deliberate indifference may be shown, for instance, where "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."  *Id.* at 390.  The plaintiff must also demonstrate that the deficiency in training actually caused the constitutional violation alleged.  *Id.* at 391.

The parties dispute the pleading standard for *Monell* claims and whether plaintiffs must meet *Iqbal*'s heightened pleading requirements to state a claim for municipal liability.  The Ninth Circuit has explained that the pleading requirements for civil actions, including *Monell* claims, require that plaintiff's allegations "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d

---

[13] Plaintiffs also claim *Monell* liability against the District.  FAC ¶ 44.  However, all claims against the District are dismissed due to the Eleventh Amendment as discussed above.  Furthermore, *Monell* only allows section 1983 claims against municipalities and local governments, not state agencies like the District.  *See Monell*, 436 U.S. at 690 (municipalities are "persons" under section 1983 and are not protected by the Eleventh Amendment).

United States District Court
Northern District of California

631, 637 (9th Cir. 2012).[14]  Plaintiff's factual allegations "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  *Id*. (citations omitted).

Here, plaintiffs have alleged that the violations of their constitutional rights were "caused by customs, policies, directives, practices, acts and omissions of authorized policy makers of . . . the [City]."  FAC ¶ 44.  Plaintiff further alleged that "said customs, policies and practices include . . . the use of excessive force and wrongful arrests to deter First Amendment activity; the failure to maintain adequate policies, and to adequately train, supervise and control officers concerning the policing of demonstrations and other expressive activities; concerning use of force and use of force reporting; concerning the probable cause requirement for arrest; concerning the cite and release requirement for misdemeanor arrests; and/or other customs, policies and/or practices subject to continuing discovery."  *Id*. ¶ 44.  Plaintiffs' allegations are not sufficiently specific to identify a relevant policy or custom.  *Cf. Von Haar v. City of Mountain View*, No. 10–CV–02995–LHK, 2011 WL 782242, at *5 (N.D. Cal. Mar.1, 2011) (finding that the plaintiff's allegations of municipal liability were sufficient to survive a motion to dismiss because plaintiff identified three specific areas in which the defendant municipality's training was deficient[15]).  Without pleading specific facts to support the alleged customs, policies, or practices, plaintiffs' allegations merely recite the elements of causes of action.  The FAC has no underlying facts sufficient to provide fair notice as to which of the City's policies or practices was the moving force behind the alleged Constitutional violations.  *See AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d at 636-37.  Moreover, plaintiffs do not allege facts that give rise to an inference that the City of San

---

[14] The Ninth Circuit's pre-*Iqbal* pleading standard for *Monell* claims, which plaintiffs rely on, is no longer good law.  Before *Iqbal*, the Ninth Circuit held that "a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice."  *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988).  Following *Iqbal*, the Ninth Circuit clarified that *Iqbal*'s heightened pleading standard also applies to *Monell* claims.  *AE ex rel. Hernandez*, 666 F.3d at 637.

[15] In *Von Haar*, the plaintiff's *Monell* claim was dismissed because it was premised on a non-cognizable Eight Amendment claim.  2011 WL 782242, at *5.

Francisco's failure to train amounted to a "deliberate" or "conscious" choice by the municipality. *See City of Canton*, 489 U.S. at 389.

In their opposition, plaintiffs argue that Chancellor Tyler, as a policymaker, ratified the use of police force by ordering the police to keep the protesters from entering Conlan Hall and by issuing an official statement that falsely accused plaintiffs of being violent during the protest. Dkt. 31, Pls.' Opp. at 8. A local government entity may be liable under Section 1983 if "an official with final policy-making authority . . . ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010) (internal quotation marks and citations omitted). Based on plaintiff's allegations, Chancellor Tyler is a policymaker for CCSF and the District. Dkt. 31, Pls.' Opp. at 8. However, plaintiffs do not advance facts that Chancellor Tyler was a policymaker for the City. Moreover, plaintiffs' allegation that Chancellor Tyler gave orders to SFPD officers, employees of the City, to keep protesters from entering Conlan Hall is insufficient to show that Chancellor Tyler possessed "*final* policy-making authority" for the City. *See Clouthier*, 591 F.3d at 1250 (emphasis added). Accordingly, plaintiffs' allegations for municipal liability are insufficient, and plaintiffs' *Monell* liability claim against the City is dismissed with leave to amend.

IV.     **State Law Claims**

        **A.  California Education Code § 66301**

Pippenger seeks injunctive relief for violation of California Education Code § 66301 against the District and Chancellor Tyler.

The Eleventh Amendment to the U.S. Constitution states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has interpreted this language to prohibit federal courts from granting injunctive relief against states or state officials for violations

United States District Court
Northern District of California

26

of state law.[16] *Pennhurst* 465 U.S. at 106 ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment."). Accordingly, the Court GRANTS defendants' motion to dismiss plaintiff's claim for violation of California Education Code § 66301 *with prejudice*. *See Gallagher v. Univ. of California, Hastings Coll. of the Law*, No. C011277 PJH, 2001 WL 1006809, (N.D. Cal. Aug. 16, 2001) (holding that a cause of action under Cal. Educ. Code § 66301 against state officials is barred by sovereign immunity).

### B.  False arrest and false imprisonment (Claims Five and Six)

Plaintiff Pippenger states claims for false arrest (Claim Five) and for false imprisonment (Claim Six) against all defendants except the District and Chancellor Tyler.  False arrest or false imprisonment under California law is "the unlawful violation of the personal liberty of another." Cal. Penal Code § 236.  Under California law, the elements of false imprisonment are: "1) the nonconsensual, intentional confinement of a person, 2) without lawful privilege, and 3) for an appreciable period of time, however brief."   *Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1205 (9th Cir. 2003) (citations omitted).   California law enforcement officers may not be held civilly liable for false arrest or false imprisonment if "[t]he arrest was lawful, or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful."  Cal. Penal Code § 847(b)(1).

Here, allegations supporting plaintiffs' Fourth Amendment unlawful arrest claim also support Pippenger's false arrest claim – i.e. that Pippenger's arrest was without lawful privilege. "The pertinent inquiry in regard to . . . a civil false imprisonment charge as defined by section 236

---

[16] While defendants do not raise an Eleventh Amendment defense to this claim, the Court has an independent duty to ensure it has jurisdiction to hear a cause of action. *In re Jackson* 184 F.3d 1046, 1048 (9th Cir.1999) ("Eleventh Amendment sovereign immunity limits the jurisdiction of the federal courts and can be raised by a party at any time during judicial proceedings, or by the court sua sponte.").

United States District Court
Northern District of California

and as applied to police officers in arrest situations, is the Fourth Amendment reasonableness standard as determined by probable cause." *Bolbol v. City of Daly City*, 754 F. Supp. 2d 1095, 1115 (N.D. Cal. 2010); *see also Peng v. Mei Chin Penghu*, 335 F.3d 970, 976 (9th Cir. 2003) (finding that the test under California law for whether an officer has probable cause for a warrantless arrest is "very similar to the Fourth Amendment test applied by [the Ninth Circuit]"). As discussed above in consideration of plaintiffs' Fourth Amendment unlawful arrest claim, Pippenger has alleged facts sufficient to support an inference that his arrest was without probable cause, thereby supporting an inference that his arrest was unlawful under both federal and California law. *See Bass v. City of Fremont*, 2013 WL 891090, at *7 (denying the defendants' motion to dismiss the plaintiff's false arrest claim because the plaintiff "has alleged facts sufficient to support a reasonable inference that his arrest was without probable cause" under the Fourth Amendment); *cf. Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1165–66 (N.D. Cal. Aug. 3, 2009), *amended in part* (Sept. 8, 2009) (holding that the defendant officers were not liable for violating section 236 because the seizure was reasonable under the circumstances). Accordingly, to the extent that Pippenger's false arrest claim is based on the same facts supporting plaintiffs' Fourth Amendment unlawful arrest claim, defendants' motion to dismiss Pippenger's false arrest claim against Officer Lim, Sergeant Gaytan, and Officers Torres, Boyko, and McGlaston is DENIED. Defendants' motion to dismiss Pippenger's false arrest claim against Chief Barnes, Lieutenant Wendt, Sergeant Quintana, Chief Suhr, and Sergeant Kumli is GRANTED with leave to amend.

Pippenger states his false imprisonment claim on grounds that defendants' "act of intentionally imprisoning [him] in the San Francisco Jail, rather than citing and releasing [him], in violation of Penal Code section 853.6, constituted false imprisonment." Dkt. 12, FAC ¶ 64. However, defendants correctly note that Pippenger fails to specify *which* defendants "caused [him] to be booked into the San Francisco Jail." Dkt. 17; Defs.' Mot. to Dismiss at 22; FAC ¶ 37. Without specific allegations regarding which defendants booked Pippenger into jail, the Court cannot infer whether and which defendants should be held liable under Pippenger's false

28

imprisonment claim.    Accordingly, as Pippenger's false imprisonment claim is based on defendants' "act of intentionally imprisoning [him] in the San Francisco Jail," the Court GRANTS defendants' motion to dismiss plaintiffs' false imprisonment claim with leave to amend.

### C.  California Civil Code § 51.7 (Ralph Civil Rights Act) (Claim Seven)

Plaintiffs Pippenger and Save CCSF claim violations of California Civil Code § 51.7 (Claims Seven) against all defendants.  Section 51.7, also known as the Ralph Civil Rights Act, provides that all persons within California have the right to be free from any "violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation . . ."  Cal. Civ. Code § 51.7.  The elements of a section 51.7 claim are: (1) the defendant threatened or committed violent acts against the plaintiff; (2) the defendant was motivated by his perception of plaintiff's [protected characteristic]; (3) the plaintiff was harmed; and (4) the defendant's conduct was a substantial factor in causing the plaintiff's harm.    *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 880-81 (2007); Cal. Civ. Code § 51.7. Plaintiffs contend that they have sufficiently stated a claim for relief under section 52.1 based on the excessive force used on Pippenger and members of Save CCSF in violation of the Fourth Amendment.

Even assuming that plaintiffs have pled sufficient facts to demonstrate the first, third, and fourth elements of their section 51.7 claim based on their Fourth Amendment excessive force claim against Officer Lim, Sergeant Gaytan, and Officers Torres, Boyko, and McGlaston, there are insufficient facts to give rise to an inference that these officers' actions were motivated by their perception of plaintiffs' political affiliation.  In order to establish that the defendant's wrongful conduct was motivated by his perception of plaintiff's political affiliation or protected characteristic, the plaintiff must show that the defendant was "biased against or had an animus against" those individuals.  *See Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th at 881 (2007) (holding that the lower court did not err in granting nonsuit on plaintiffs' section 51.7 claim because "there was no evidence that [the defendant] took the alleged actions because he was

biased against or had an animus against disabled children"); *see also Bolbol v. City of Daly City*, 754 F. Supp. 2d 1095, 1117 (N.D. Cal. 2010) (granting summary judgment for the defendant officers as to the plaintiff's section 51.7 claim because there was no evidence that the defendant's arrest of the plaintiff was motivated by "animus toward [the plaintiff's] political affiliation" with animal rights activism; *see also Knapps v. City of Oakland*, 647 F. Supp. 2d at 1167-68 (holding that the defendants are not liable under section 51.7 because the plaintiff failed to point to evidence showing that the defendant officers' use of excessive force was conducted "with racial animus").

Here, plaintiffs alleged that, while other students and staff were permitted inside Conlan Hall, "[w]hen demonstrators attempted to enter Conlan Hall, officers from both police agencies, acting in concert with one another, responded with unnecessary and excessive force, shoving and hitting numerous students." FAC ¶¶ 30-31. While plaintiffs' allegations show that the officers were responding to Chancellor's Tyler's orders to keep protestors out of Conlan Hall, these allegations do not show that the officers committed the alleged wrongful conduct because they were "biased against or had an animus against" individuals who are politically affiliated with the protest. Accordingly, the Court GRANTS defendants' motion to dismiss as to plaintiffs' section 51.7 claim with leave to amend.

### D.  California Civil Code § 52.1 (Bane Civil Rights Act) (Claim Eight)

Plaintiffs Pippenger and Save CCSF state a claim against all defendants for violations of California Civil Code § 52.1.  Section 52.1, which codifies the Tom Bane Civil Rights Act, provides a private right of action for damages against any person who "interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civil Code § 52.1(b).  Section 52.1 was intended to be a state law analogue to section 1983. *Bass v. City of Fremont*, 2013 WL 891090, at *5 (N.D. Cal. Mar. 8, 2013) (citing Assembly Committee

on the Judiciary, Bill Analysis, AB 2719 (as introduced February 25, 2000)).  However, it differs from section 1983 "because its provisions are limited to threats, intimidation, or coercion that interferes with a constitutional or statutory right."  *Venegas v. Cnty. of Los Angeles*, 32 Cal. 4th 820, 843 (2004).  In pursuing a section 52.1 claim, "plaintiffs need not allege that defendants acted with discriminatory animus or intent, so long as those acts were accompanied by the requisite threats, intimidation, or coercion."  *Id*.

Plaintiffs contend that they have sufficiently stated a section 52.1 claim based on violations of the Fourth Amendment.  Dkt. 31, Pls.' Opp. at 23-24.  Defendants' primary argument is that plaintiffs failed to allege the requisite showing of threats, intimidation, and coercion.  Defendants contend that to state a valid claim under section 52.1, plaintiffs must allege facts showing threats, intimidation or coercion *independent* of that inherent in their Fourth Amendment claims for excessive force and unlawful arrest.   Dkt. 17, Defs.' Mot. to Dismiss at 23-24 (emphasis in original).  Defendants rely on *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947 (2012), in which the court of appeal rejected a section 52.1 claim brought by a man who, due to a clerical error, was wrongfully detained for sixteen days after the charges against him were dismissed.  *Id*. at 950.  *Shoyoye* concluded that section 52.1 "requires a showing of coercion independent from the coercion inherent in the wrongful detention itself."  *Id*. at 959.  Applying *Shoyoye* broadly, defendants move to dismiss plaintiffs' section 52.1 claim on grounds that plaintiffs have failed to allege a threat, intimidation, or coercion that is separate and apart from that inherent in the use of excessive force and unlawful arrests.  Dkt. 17, Defs.' Mot. to Dismiss at 24.

Defendants' interpretation of *Shoyoye* is contrary to *Venegas v. County of Los Angeles*, in which the California Supreme Court held that the plaintiffs "adequately stated a cause of action under section 52.1" based on allegations showing plaintiffs' unreasonable seizure and wrongful arrest.  32 Cal. 4th at 827-28.  Moreover, courts in this district have limited *Shoyoye* to cases where the defendant's actions were negligent and have held that, where the defendant's actions are intentional, section 52.1 does not require threats, coercion, or intimidation independent from the

threats, coercion, or intimidation inherent in the alleged constitutional or statutory violation. *Cuviello v. City & Cnty. of San Francisco*, 940 F. Supp. 2d at 1102; *DV, et al. v. City of Sunnyvale*, No. C-14-2155-RMW, 2014 WL 4072338, at *5 (N.D. Cal. Aug. 14, 2014); *Bass v. City of Fremont*, 2013 WL 891090, at *5-6; *Holland v. City of San Francisco*, No. C10-2603 TEH, 2013 WL 968295, at *10 (N.D. Cal. Mar. 12, 2013).

Here, plaintiffs' allegations of excessive force and unlawful arrests demonstrate the defendants' intentional conduct, so plaintiffs are not required to plead facts showing threats, intimidation, or coercion independent of that inherent in excessive force or unlawful arrest. As discussed above, plaintiffs allege that Officer Lim, Sergeant Gaytan, and Officers Torres, Boyko, and McGlaston engaged in a series of intentional conduct that resulted in Pippenger's multiple injuries and unlawful seizure. To the extent that plaintiffs' section 52.1 claim is seeking to assert rights under the Fourth Amendment, plaintiffs have pled sufficient facts to state a section 52.1 claim. *See Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013) ("the elements of the excessive force claim under § 52.1 are the same as under § 1983"); *see also Ohlsen v. Cnty. of San Joaquin*, No. 2:06-CV-2361-GEB-GGH, 2008 WL 2331996, at *4 (E.D. Cal. June 4, 2008) (granting summary judgment on the plaintiff's section 52.1 claims because the record reveals that the officers interfered with the plaintiff's Fourth Amendment right by unlawfully arresting him). Accordingly, the Court DENIES defendants' motion to dismiss as to plaintiffs' section 52.1 claim based on violations of the Fourth Amendment against Officer Lim, Sergeant Gaytan, and Officers Torres, Boyko, and McGlaston. The Court GRANTS defendants' motion to dismiss as to plaintiffs' section 52.1 claim against all other individual defendants with leave to amend.

### E.  Negligence (Claim Nine)

Pippenger brings negligence claims (Claim Nine) against all defendants except the District. The elements of negligence under California law are: "(a) a legal duty to use due care; (b) a breach of such legal duty; [and] (c) the breach as the proximate or legal cause of the resulting injury." *Evan F. v. Hughson United Methodist Church,* 8 Cal. App. 4th 828, 834 (1992) (internal quotation

marks and citation omitted).  Pippenger alleges that "[d]efendants have a duty of care . . . to ensure that defendants did not cause unnecessary or unjustified harm to plaintiffs, to provide medical intervention and attention to plaintiffs, and a duty of care to hire, train, supervise and discipline police officers so as not to cause harm to plaintiffs . . ."  FAC ¶ 70.  However, as defendants state in their motion, Pippenger does not specify which defendants or what conduct breached the listed duties.  Pippenger's allegation in the FAC that the "acts and omissions of defendants breached the duty of care defendants owed to plaintiffs" is too generalized to infer which defendant violated which duty.

In the Opposition, Pippenger contends that he has stated a negligence claim based on violations of his Fourth Amendment right to be free from excessive force and false arrest.  Dkt. 31, Pls.' Opp. at 24.  The Ninth Circuit held that an allegation of Fourth Amendment violation "suffices to establish the breach of a duty of care under California law."  *Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1170 (9th Cir. 2011) (reversing the district court's dismissal of the plaintiff's state law negligence claim based on the plaintiff's allegations of excessive force in violation of the Fourth Amendment).[17]  Accordingly, for reasons discussed above in consideration of plaintiffs' Fourth Amendment claim, the Court finds that Pippenger pled sufficient facts to state a negligence claim against Officer Lim, Sergeant Gaytan, and Officers Torres, Boyko, and McGlaston.

Defendants argue that they are entitled to immunity from plaintiffs' negligence claim because, under California Government Code § 820.2, their conduct is shielded from liability.  Section 820.2 provides that "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."  Cal. Gov't. Code § 820.2.  However, "[s]ection 820.2

---

[17]  In 2013, while the California Supreme Court ruled that the "[t]he Fourth Amendment's 'reasonableness' standard is not the same as the standard of 'reasonable care' under tort law," *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 638 (2013), the Court clarified that the protection against excessive force under "state negligence law . . . is broader than federal Fourth Amendment law."  *Id*. at 639 (internal citations omitted).

United States District Court
Northern District of California

does not confer immunity on peace officers for discretionary acts involving unreasonable use of force."  *Megargee v. Wittman*, 550 F. Supp. 2d 1190, 1208 (E.D. Cal. 2008); *Scruggs v. Haynes*, 252 Cal. App. 2d 256, 264 (1967) ("California cases have consistently held that a peace officer making an arrest is liable to the person arrested for using unreasonable force"); *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1016 (9th Cir. 2002) ("California denies immunity to police officers who use excessive force in arresting a suspect").  As discussed above, plaintiffs have sufficiently alleged facts to state a Fourth Amendment claim for excessive force against Officer Lim, Sergeant Gaytan, Officer Torres, Officer Boyko, and Officer McGlaston.  Thus, these individual defendants are not entitled to immunity under section 820.2.  Accordingly, with respect to Pippenger's negligence claim, defendants' motion is DENIED as to Officer Lim, Sergeant Gaytan, Officer Torres, Officer Boyko, and Officer E. McGlaston; and is GRANTED with leave to amend as to Chancellor Tyler, Chief Barnes, Lieutenant Wendt, Sergeant Quintana, Chief Suhr, and Sergeant Kumli.

### F.  Municipal liability for state law claims

The Court also finds that plaintiffs have sufficiently stated state law claims against the City under the theory of respondeat superior for the actions of Officer Lim.  Unlike *Monell*, which prohibits vicarious liability, California law imposes liability on public entities for state law causes of action under the doctrine of respondeat superior.  Cal. Gov't Code § 815.2(a).  A public entity, such as a municipality, can be held vicariously liable on state law claims for the actions of its employee pursuant to California Government Code § 815.2(a).

Section 815.2 grants immunity to public entities only where the public employee would also be immune. *See* Cal. Gov't Code § 815.2(b).  Thus, the City's immunity depends on whether Officer Lim is immune.  As discussed above, the Court has determined that plaintiffs have stated a claim against Officer Lim under Section 52.1, for false arrest, and for negligence.  Each of these state law claims against Officer Lim arises from allegations of excessive force and unlawful arrest.  "California denies immunity to police officers who use excessive force in arresting a suspect.

34

*Robinson v. Solano County,* 278 F.3d 1007, 1016 (9th Cir. 2002). Similarly, public employees are not entitled to immunity in suits for false arrest or false imprisonment. *See* Cal. Gov't Code § 820.4. Thus, Officer Lim is not immune from claims involving excessive force and unlawful arrest, and neither is the City.

Moreover, courts have specifically ruled that cities may be held vicariously liable for its police officers' violation of section 52.1 and other violations arising from unreasonable force. *See, e.g.*, *Knapps v. City of Oakland*, 647 F. Supp. 2d at 1168–69 (finding City of Oakland liable under respondeat superior for police officers' violations of section 52.1); *Mary M. v. City of Los Angeles*, 54 Cal. 3d 202, 215 (1991) ("a governmental entity can be held vicariously liable when a police officer acting in the course and scope of employment uses excessive force or engages in assaultive conduct"); *Santos ex rel. Santos v. City of Culver City*, 228 Fed. Appx. 655, 659 (9th Cir. 2007) (remanding for consideration of whether City of Culver City was vicariously liable for violation of § 52.1); *Ohlsen v. Cnty. of San Joaquin*, No. 06–CV02361 GEB, 2008 WL 2331996, at *5 (E.D. Cal. June 4, 2008) (granting summary judgment for plaintiff that County of San Joaquin is vicariously liable for its employees' violation of § 52.1). Accordingly, the Court finds that plaintiffs have stated claims against the City under the theory of respondeat superior for Officer Lim's violations of state law. Therefore, the City is a proper defendant to plaintiff's section 52.1 claim, false arrest claim, and negligence claim based on vicarious liability for Officer Lim's violation of these state laws, and the Court DENIES defendants' motion to dismiss these claims against the City.

## CONCLUSION

For the reasons stated above, the Court hereby GRANTS defendants' motion to dismiss plaintiffs' claims against the District without leave to amend.

As to plaintiffs' Fourth Amendment claim (Claim One): (1) the Court DENIES defendants' motion to dismiss plaintiffs' claims against Officers Lim, Sergeant Gaytan, Officer Torres, Officer Boyko, and Officer McGlaston; and (2) the Court GRANTS defendants' motion to

dismiss plaintiffs' claims against Chancellor Tyler, Chief Barnes, Lieutenant Wendt, Sergeant Quintana, Chief Suhr, Sergeant Kumli, and the City with leave to amend.

As to plaintiffs' First Amendment claim (Claim Two): (1) the Court DENIES defendants' motion to dismiss plaintiffs' claims against Officer Lim, Sergeant Gaytan, Officer Torres, Officer Boyko, Officer McGlaston, and Chancellor Tyler; and (2) the Court GRANTS defendants' motion to dismiss plaintiffs' claims against Chief Barnes, Lieutenant Wendt, Sergeant Quintana, Chief Suhr, Sergeant Kumli, and the City with leave to amend.

As to plaintiffs' Fourteenth Amendment claim (Claim Three), the Court GRANTS defendants' motion to dismiss with leave to amend.

As to Pippenger's claim for relief under section 66301 of the California Education Code (Claim Four), the Court GRANTS defendants' motion to dismiss, without leave to amend.

As to Pippenger's claim for false arrest (Claim Five): (1) the Court DENIES defendants' motion to dismiss plaintiffs' claims against Officer Lim, Sergeant Gaytan, Officer Torres, Officer Boyko, Officer McGlaston, and the City; and (2) the Court GRANTS defendants' motion to dismiss plaintiffs' claims against Chief Barnes, Lieutenant Wendt, Sergeant Quintana, Chief Suhr, and Sergeant Kumli with leave to amend.

As to plaintiffs' claim for false imprisonment (Claim Six), the Court GRANTS defendants' motion to dismiss with leave to amend.

As to plaintiffs' claim for violations of section 51.7 of the California Civil Code (Claim Seven), the Court GRANTS defendants' motion to dismiss with leave to amend.

As to plaintiffs' claim for violations of section 52.1 of the California Civil Code: (1) the Court DENIES defendants' motion to dismiss plaintiffs' claims against Officer Lim, Sergeant Gaytan, Officer Torres, Officer Boyko, Officer McGlaston, and the City; and (2) the Court GRANTS defendants' motion to dismiss plaintiffs' claims against Chancellor Tyler, Chief Barnes, Lieutenant Wendt, Sergeant Quintana, Chief Suhr, and Sergeant Kumli with leave to amend.

As to Pippenger's negligence claim: (1) the Court DENIES the motion to dismiss plaintiffs' claims against Officer Lim, Sergeant Gaytan, Officer Torres, Officer Boyko, Officer

1  McGlaston, and the City; and (2) the Court GRANTS defendants' motion to dismiss plaintiffs'

2  claims against Chancellor Tyler, Chief Barnes, Lieutenant Wendt, Sergeant Quintana, Chief Suhr,

3  and Sergeant Kumli with leave to amend.

4       **Any amended complaint must be filed on or before June 15, 2015**.

5

6       **IT IS SO ORDERED.**

7  Dated:  May 27, 2015

8

9

10                                                  SUSAN ILLSTON
                                              United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California